IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIANA RIVERA,

      Plaintiff,

      v.

OFFICER GABRIEL HECK and
OFFICER DAVID WHITE,

      Defendants.

OPINION and ORDER

16-cv-673-wmc

---

Plaintiff Briana Rivera brings claims against Madison Police Officers Gabriel Heck and David White under the Fourth Amendment, as well as state law for assault and battery. A jury trial is set to commence on Monday, November 13, 2018. In advance of the final pretrial conference scheduled for October 30, 2018, the court issues the following opinion and order addressing the parties' motions in limine, beginning with their respective motions to exclude the testimony of each other's police practices expert under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

OPINION

## I. MOTIONS TO EXCLUDE EXPERT TESTIMONY

In its gatekeeping role, a federal court may not admit expert opinions unless: (1) the expert is qualified; (2) the opinions are based on reliable methods and reasoning; and (3) the opinions will assist the jury in deciding a relevant issue. *See Myers v. Ill. Cent. R. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). To meet the third requirement, an expert "must testify to something more than what is obvious to the layperson[.]" *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (citation omitted). In this instance, although the parties' experts

are qualified to render the opinions set forth in their respective reports, the court concludes that neither offer opinions that are likely to be of assistance to the jury, especially after considering the risk that those opinions may usurp the jury's role as the fact finder. Additionally, any limited probative value of the proposed expert testimony would be substantially outweighed by the danger of unfair prejudice under Federal Rules of Evidence 403. Therefore, the court will exclude both retained police practices experts.

## A. Background

The court begins by reviewing the specific claims remaining and the factual disputes yet to be decided by the jury. This case arises out of a domestic incident which occurred on January 25, 2014, and the background of which is largely undisputed.[1] At around 2:00 a.m. on that date, Rivera and her teenage sister arrived at the third-floor apartment of Modou Sonko, a friend of plaintiff's then-fiancé (now husband), Vickson Magada. A few hours earlier, Magada had gone to visit there with his and Rivera's 2-year old daughter. Rivera was understandably worried about her daughter being up so late, and she had attempted to call Magada several times, but Magada had not answered.

When Rivera and her sister arrived at the apartment, Rivera was upset and engaged in a verbal dispute with Magada. Retrieving their daughter, Rivera then descended as far as the second floor of the apartment building before Magada caught up with her. A second-floor resident of the apartment building opened her door to see Rivera against a wall with Magada appearing ready to strike her. The neighbor told Magada that he better not hit her and that

---

[1] For a more detailed summary of the relevant facts, the reader should refer to the court's summary judgment decision. (Dkt. #57.)

she was calling the police. Magada then released Rivera, who ran downstairs to the parking lot with her daughter and sister. Magada followed, and they all left together.

Madison Police Officer White was first dispatched to the apartment building in response to the neighbor's call. Once there, Officer White interviewed both the caller and Sonko. The latter told White that Rivera had an anger management problem. Sonko further reported that after arriving at his apartment, Rivera yelled at both Magada and her daughter, slapped the child, threw a shoe at Magada, and pushed him. White then proceeded to Rivera and Magada's home, which was located in a different apartment complex.

When Officer White arrived, Rivera and Magada were both calm. They permitted White to come into the small, first-floor entryway of their second-floor apartment. Officer White agreed to stay downstairs in the entryway and sent Magada upstairs to the living area so White could speak to Rivera alone. Shortly thereafter, defendant Officer Heck arrived. Letting Heck into the entryway of the apartment, White apparently directed Heck to interview Magada, who was still upstairs. However, when Officer Heck went upstairs, Rivera objected, and she began yelling up the stairs for both Magada and Heck to come downstairs and talk outside.

The parties dispute the details of what happened next, but agree that Officer Heck eventually came back down the stairs, at which point a physical altercation began between Rivera and Heck. Rivera maintains that Heck ran down the stairs, grabbed her, put her in handcuffs, and slammed her head against the wall, while also pulling on her hair multiple times. Defendants agree that Officer Heck ran down the stairs and detained Rivera, but only because he saw her pushing Officer White, who then had grabbed Rivera's arm to prevent her from

ascending the stairs. Defendants also say that Rivera actively resisted their efforts to restrain her, both by pulling her arms away and thrusting her head towards them.

Ultimately, Rivera was arrested and transported to Dane County jail, where she was booked for the crime of resisting/obstructing under Wis. Stat. § 946.41(1). She was later prosecuted for disorderly conduct under Wis. Stat. § 947.01(1), and acquitted by a jury, although the allegations against her related only to her conduct at Sonko's apartment, rather than any of her alleged actions at her own apartment.

In this lawsuit, Rivera raised the following claims: (1) defendants had no probable cause to arrest her; (2) even if defendants had probable cause, defendants acted unlawfully by arresting her in her home without a warrant, consent or exigent circumstances; (3) defendants used excessive force while arresting her; (4) defendants committed assault and battery in violation of state law; and (5) the City of Madison failed to properly train, supervise and discipline defendants. The court granted defendants summary judgment on their defense of qualified immunity with respect to Rivera's false arrest claim (count 1), concluding that both White and Heck had at least arguable probable cause to believe Rivera had engaged in disorderly conduct at Sonko's apartment. (Dkt. #57 at 17.) The court also granted summary judgment to the City on Rivera's *Monell* claim for failure to train, supervise and discipline defendants properly (count 5). This leaves Rivera's unlawful arrest, excessive force and state law claims for trial (counts 2-4).

## B. Expert Opinions

### 1. Ernest Burwell

Defendants move to exclude the opinions of plaintiff's expert, Ernest Burwell, a former deputy sheriff with the Los Angeles Sheriff's Department, arguing that Burwell lacks the

qualifications of an expert, and that even if he could offer expert testimony about police practices, his opinions in this case are not based on his expertise, but rather consist primarily of statements about how the jury should resolve factual disputes. (Dkt. #60.)

As an initial matter, the assertion that Ernest Burwell's some 30 years' experience as a Los Angeles Deputy Sheriff, SWAT team member and trainer does not qualify him as an expert in police practices is laughable. Moreover, the defendants' brief is also not particularly helpful in analyzing the admissibility of Burwell's actual opinions and the basis for them, which are set forth in his written report. Instead, defendants' brief largely attacks statements Burwell made during his deposition *in response to questions* posed by defense counsel. As such, much of defendants' brief attacks a strawman of their own making. Indeed, defense counsel repeatedly asked questions that were bound to elicit inadmissible responses from Burwell. As such questions would not be permitted at trial, Burwell's responses are wholly unhelpful in determining the admissibility of his actual opinions set forth in his expert report and statements in his deposition relating directly to those opinions or the underlying basis for them. That being said, the court's own review of Burwell's expert report, in conjunction with plaintiff's response to defendants' motion, raise substantial concerns that Burwell intends to offer opinions that are unlikely to assist the jury in resolving the remaining factual issues in this case, and even worse, would usurp the jury's role in doing so. Neither is permissible.

Specifically, according to his report, Burwell purports to have formed opinions based on his review of numerous documents and other evidence of record, including the 911 call, police reports of the incident, photographs of Rivera's injuries, documents relating to Rivera's criminal jury trial, depositions of the parties, Madison Police Department standards, California training standards and his own experience. Based on that review, Burwell proposes to testify

that:  (1) Rivera was falsely arrested because Officers White and Heck lacked probable cause to arrest her; (2) Officer White had no reason to grab Rivera; (3) Officers White and Heck used excessive, unnecessary and unreasonable force on Rivera; (4) Officers White and Heck had no reason to detain or arrest Rivera; (5) there were no exigent circumstances that required the officers to enter Rivera's home without a warrant; (6) Madison Police Department failed to supervise and conduct a proper investigation of the incident; (7) Officers White and Heck lost their temper when dealing with Rivera; (8) Officer White should have intervened and prevented Heck from physically harming Rivera; (9) Rivera was held in handcuffs for too long; (10) the officers should have called Rivera and Magada on the phone before going to their home; (11) Officer White did not complete an accurate police report regarding the arrest of Rivera; and (12) Rivera's arrest did not comply with Madison Police Department policy. (Burwell Rep., dkt. #14, at 8-22.)

Several of these opinions are plainly improper legal conclusions, not to mention already *resolved* as a matter of law at summary judgment.  Specifically, the court already concluded that defendants had arguable probable cause to arrest Rivera; no exigent circumstances existed for entry into Rivera's home; and there was no evidence showing that the City failed to supervise its officers or investigate the incident properly.  Furthermore, some of Burwell's other opinions address issues that are not relevant to the remaining claims in this case and would be distracting or confusing, such as whether Rivera was held in handcuffs for too long after she was arrested and whether Officer White or Heck should have contacted Rivera or Magada by telephone. Rivera has not raised a claim of excessive force based on handcuffing, and whether some policing standards advise officers to contact individuals involved in domestic disputes by

telephone, Officers White or Heck's failure to do so is not probative of whether they used excessive force on her later.

Setting aside these patently inadmissible opinions, the only opinions in Burwell's report that appear to be relevant to the remaining issues concern the level of force Officers White and Heck applied to Rivera. Indeed, Burwell's opinion about the use of force is the *only* opinion that Rivera specifically defends in her brief in opposition to the motion to exclude. (Plt.'s Opp. Br., dkt. #125, at 6.)

However, as currently formulated, Burwell's opinion about the defendants' use of force is based primarily on his attempt to resolve factual disputes regarding what happened during the incident, including offering his own opinions regarding the credibility of witnesses and the parties' states of mind, rather than any expertise regarding proper police practice. For example, Burwell's opinion that "Officers White and Heck used excessive, unnecessary and unreasonable force" on Rivera, (Burwell's Rep., dkt. #14, at 10), is based in part on his accepting Rivera's version of events as true: Rivera "was never a threat to the officers" and "was not making any movements toward the officers"; "Officers White and Heck lost their temper," "used force on [Rivera] for no reason," "pulled [Rivera's] hair," and repeatedly pushed her against the wall, despite her presenting no risk of harm to the officers. (Burwell's Rep., dkt. #14, at 10, 12, 16, 18.) Witness credibility should be evaluated by the jury, not an expert. *See United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999) ("[T]he credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury—determining the credibility of witnesses."); *Fields v. City of Chicago*, No. 12 C 1306, 2018 WL 1652093, at *6 (N.D. Ill. Apr. 5, 2018) ("An expert witness may not

usurp the jury's function to weigh evidence and make credibility determinations.") (citation omitted).  As a result, all of these opinions usurp the jury's function, and they are out as well.

Additionally, Burwell opines that Officers White and Heck were trained to respond to potential victims of domestic violence by using more compassionate and respectful behavior than they used, such as using verbal commands to gain compliance.  (Burwell Rep., dkt. #14, at 17.)  Aside from impermissibly purporting to *know* what happened, this opinion is also not particularly helpful for resolving the remaining factual disputes before the jury.  As to the first, Officers White and Heck testified that they were *not* disrespectful to Rivera and Magada, and they used force only after *Rivera* lost control.  At most, Burwell could opine on whether the defendants conduct complied with police policy *assuming* the jury found Rivera's version of events to be more credible, unless he is also opining that White and Heck were not trained to use force against a person who is flailing her arms around and pushing or attempting to head-butt an officer on a stairway.

Finally, this case does not present complex issues about an officer's use of deadly (or even severe) force was consistent with their training.  As the Seventh Circuit has already explained, "[e]xpert testimony about police standards may appropriately assist the jury in resolving some excessive-force questions, but sometimes evidence of this type is unhelpful and thus irrelevant, particularly when no specialized knowledge is needed to determine whether the officer's conduct was objectively unreasonable." *United States v. Brown*, 871 F.3d 532, 534 (7th Cir. 2017).  For example, if a case involves use of force "peculiar" to law enforcement, such as "a gun, a slapjack, mace, or some other tool," expert testimony may be useful, but "[i]n many cases evaluating an officer's conduct will draw primarily on the jury's collective common sense." *Id.*  "The jury's common experience will suffice, for example, when 'police use[ ] their bare

hands in making an arrest, the most primitive form of force.'" *Florek v. Vill. of Mundelein, Ill.*, 649 F.3d 594, 602 (7th Cir. 2011). This would appear to be just such a case.

Indeed, in *Brown*, the Seventh Circuit affirmed the district court's exclusion of expert testimony where an officer was accused of hitting "a motionless man in the face with his fist and continu[ing] to beat and kick him before placing him under arrest." 871 F.3d at 539. The court explained that the officer "didn't use a sophisticated tool or technique," and thus, the proposed expert's "explanation of the Chicago Police Department's Use of Force Model would have added nothing that jurors could not ascertain on their own by viewing the surveillance videotape and applying their everyday experience and common sense." *Id.; see also Florek*, 649 F.3d at 602-03 (contrasting usefulness of expert testimony regarding "whether it was reasonable for police to use a canine officer (and its canines) in bringing a suspect to heel," with relatively unhelpful expert testimony regarding "knock-and-announce rule," noting as to the latter that "everyday experience teaches people how long it takes to walk from room to room").

In this instance, Rivera's excessive force claim involves a classic "he-said, she-said" dispute about pushing and hair-pulling. Specifically, Rivera will testify that Officer Heck unnecessarily slammed her into a wall and pulled her hair repeatedly, both before and after handcuffing her, solely because she was yelling at him to leave her house after he entered the upstairs of her home over her objections. In contrast, defendants will say that Rivera was out-of-control, resistive, refused straightforward verbal and non-verbal cues, pushed Officer White repeatedly and could have injured both officers. Ultimately, the jury will have to decide which version of this "most primitive form of force" is correct. The court is unpersuaded that police expertise will be of much use to the jury in resolving this dispute.

Perhaps most telling, despite being given every opportunity to do so, the plaintiff has yet to point to any of Mr. Burwell's specific, proffered opinions that would be helpful to the jury in resolving this factual dispute. Even if Burwell's testimony did satisfy *Daubert*, the court concludes that any arguable probative value of the opinions contained in his expert report is substantially outweighed by the danger of unfair prejudice and confusion under Fed. R. Evid. 403. As previously discussed, Burwell's entire report does little more than summarize the evidence and offer an opinion about what the jury should ultimately decide, thereby impermissibly inviting the jurors to substitute their own independent judgment with that of an expert's conclusion. *See Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006) ("Introducing two experts to testify that Officer Hespe used excessive force would have induced the jurors to substitute their own independent conclusions for that of the experts."); *Brown*, 871 F.3d at 539 ("[A]s the district judge concluded, the admission of [the expert's] testimony may have induced the jurors to defer to his conclusion rather than drawing their own."). For all of these reasons, the court will exclude Burwell's opinions.

### 2. Robert C. Willis

For much the same reasons, the court will similarly sustain plaintiff's motion to exclude the testimony of defendants' proposed policing expert, Robert C. Willis, as unhelpful to a jury. (Dkt. #60.) Defendants summarize Willis's remaining, relevant opinions from his report on pages 8 and 9 of their brief in opposition to plaintiff's motion to exclude. (Dfts.' Br., dkt. #118, at 8-9.) In particular, after considering the issues left by this court's summary judgment decision, defendants' state that they intend to solicit the following opinions from Mr. Willis at trial:

(1) "White's initial response and contact with Tate [the 911 caller] and Sonko, and then later Rivera and Magada were reasonable and appropriate and conformed with Wisconsin State Statutes, State of Wisconsin Law Enforcement Training Standards, Madison Police Department policy, training and the procedures, customs and standards of the Madison Police Department."

(2) "White and Heck's continued contact with Rivera and Magada was appropriately conducted, they used good tactics and remained reasonable and professional."

(3) "Based on their training and generally accepted policy practices, it would have been appropriate for the officers to consider the information provided in the original call for service, their personal observations, concerns they had about their own safety, as well as the welfare of Naomi and Magada, and Rivera's total lack of cooperation, in determining how best to respond and react to the situation as it unfolded at Rivera's apartment."

(4) "The use of force employed by Heck and White against Rivera in light of the events as they described them was consistent with their training and standard police practice in light of the threat posed by and behavior of Rivera. Their response was not out of proportion in the context of Rivera's actions."

(5) "White and Heck's contact with Rivera and the subsequent use of force that day was based upon training and department policy. The Madison Police Department policy is based upon the Defensive and Arrest Tactics Training System."

(*Id.*)

Willis's first opinion is at most only marginally relevant to the issues remaining in this case. The jury will not be asked to decide whether Officer White's contact with Ms. Tate and Mr. Sonko was appropriate or conformed with state law or department policies. White's interactions with these two individuals are relevant to the remaining issues only to provide context for the incident that occurred at Rivera's apartment, and any attempt by the parties to create a dispute about the appropriateness of White's interactions with Tate and Sonko would be distracting and confusing. Additionally, there is no meaningful dispute that White acted appropriately in investigating the incident by visiting Rivera and Magada's apartment. Based on what White had learned from Sonko and Tate, the court could conclude as a matter of law that White's decision to investigate further by visiting Rivera and Magada's apartment was

non-actionable. Rather, the disputed, factual issues to be resolved by the jury concern what happened *after* Officers White and Heck arrived at Rivera's apartment.

As for Willis's arguably more relevant opinions regarding the interactions between White, Heck and Rivera, they are problematic for the same reasons as Burwell's proposed opinions. As an initial matter, many of Willis' opinions regarding the use of force incident consist of improper credibility determinations and otherwise purport to usurp the jury's role in resolving factual disputes. *See, e.g.*, Willis Rep. (dkt. #16) at 14-15 (Rivera's description of incident is "not plausible," "not credible," "impossible," "not probable"); at 23 ("Rivera soon became uncooperative and irrational"; "[she] refused to listen"; and "this incident became quick, confusing and an instance where fact decisions had to be made [because of] Rivera's actions."); at 26 ("Rivera's claim that she was beaten by officers, especially Heck, for absolutely no reason, is not credible."); at 28 ("Rivera's actions bordered on violent" and she engaged in "assaultive behavior")). As discussed above, all of these opinions fall outside the appropriate role of an expert.

To Willis's credit, his report acknowledges that resolution of the remaining excessive force claim will depend on whether the jury believes Rivera's version or the officers' version of events:

> If Rivera's version were plausible, the actions of the officers, especially Heck[,] would be excessive, brutal, unlawful and even criminal, as police officers are never to use force to 'punish' or out of frustration or unjustified anger.

(*Id.* at 15.) However, Willis's opinions offer no discernible, specialized knowledge that would assist the jury in deciding who to believe in this case. For example, this is not a situation in which a specialized understanding of forensic or ballistic evidence would inform a jury's credibility determination. Indeed, again to his credit, Willis notes in his report that there is

"little" objective physical evidence as to what happened and why. (Willis Rep., dkt. #16, at 17.) Instead, as is often the case in an excessive force case, most of the relevant evidence is in the form of testimony from witnesses, and again this testimony and the limited physical evidence are simple and within a jury's ability to understand and evaluate. *See Brown*, 871 F.3d at 538 ("The everyday experience of lay jurors fully equips them to answer the reasonableness question when a case involves facts that people of common understanding can easily comprehend.") (citation and internal quotation marks omitted).

The one area in which Willis offers some specialized knowledge is in his analysis of Madison Police Department training and policies regarding use of force and his opinions about whether Officers White and Heck acted in compliance with Department training and policies. Willis opines that White and Heck followed MPD procedures regarding citizen contact and investigation of possible crime, and that such procedures and policies are reasonable. (Willis Rep., dkt. #16, at 22). Even so, this analysis, however, is too dependent on inappropriate credibility determinations. For example, Willis states that White and Heck used calm and professional communication tactics with Rivera, but that Rivera's "uncooperative and irrational" behavior made such communication ineffective. (*Id.* at 23.) Similarly, he states that the officers tried to de-escalate the situation and gain "voluntary compliance," as they had been trained to do, but that Rivera's behavior made it impossible to do so. (*Id.* at 26-27.) He goes on to opine that the officers' use of force was in accordance with the training they had received, known as Defensive and Arrest Tactics Training System, because Rivera was "ignoring verbal commands, pushing White, [was] attempting to flee or escape from his presence[, and] continued to resist and thrash around and attempted to possibly attack officers by striking them with the back of her head and/or her flailing arms." (*Id.* at 54.) In sum, Willis' opinions

relating to training and policies rely too heavily on conclusions that Rivera is lying about her behavior and White and Heck's actions, just as the proffered opinions of plaintiff's expert Burwell relies on equally inappropriate, contrary conclusions.

The court might consider allowing Willis to testify about MPD training and standard police practices relating to use of force and investigations generally, without offering his impermissible opinion about whether Officers White and Heck complied with those policies. Indeed, defendants argue that the court should permit such testimony, as it did in *Estate of DiPiazza v. City of Madison*, 16-cv-60-wmc, where experts were permitted to testify regarding "the relevant training that officers in the position of defendants would have received and the appropriate standard police practices," as well as "how the officer's conduct measured up assuming a particular factual scenario." (Dfts.' Br., dkt. #118, at 7) (citing *Estate of DiPiazza*, 2017 WL 1843316, *3 (W.D. Wis. May 5, 2017) (*Daubert* decision)). However, this case is readily distinguishable from *DiPiazza*, which involved officers using deadly force against an armed woman who was threatening suicide. In that case, the court permitted expert testimony regarding contemporary police training and tactics regarding use of lethal and non-lethal force under the specific circumstances at issue, which in the court's view were substantially outside the experience of a typical lay juror and, therefore, may be aided by an expert's opinions. *Id.* In contrast to *DiPiazza*, however, the factual disputes in this case are substantially more straightforward and within a jury's common understanding. If the jury believes Officers White and Heck's version of events, the jury can evaluate whether it was reasonable to handcuff Rivera and hold her against the wall to prevent her from thrashing around and injuring the officers. Similarly, if the jury believes Rivera's version of events, the jury can decide whether it was reasonable to place her in handcuffs, put her head against the wall and repeatedly pull her hair.

Indeed, Willis admits that such behavior would be unreasonable, making his testimony about Madison Police Department training and policies of limited usefulness.

As the Seventh Circuit explained in *Brown*, "[t]he jury's task is to determine how a reasonable officer would act in the circumstances, not how an officer in a particular local police department would act." 871 F.3d at 538-39 (affirming exclusion of expert testimony regarding Chicago Police Department's Use of Force Model); *see also Potts v. Manos*, No. 11 C 3952, 2017 WL 4365948, at *4 (N.D. Ill. Sept. 29, 2017) (excluding expert testimony regarding Cook County use of force policies in excessive force case because expert's opinion that defendants complied with county policies would not assist jury "in the factual determinations it is required to make," or shed light on "whether defendants behaved unreasonably in a way that violated plaintiff's constitutional rights").

Here, the jury can evaluate the physical evidence and witness statements and draw their own conclusions about that evidence without the help of expert testimony. *See Thompson*, 472 F.3d at 458 ("The jury, after having heard all of the evidence presented, was in as good a position as the experts to judge whether the force used by the officers to subdue Thompson was objectively reasonable given the circumstances in this case.") Therefore, the court concludes that Willis' testimony does not satisfy *Daubert*'s standards for admissibility.

Finally, as with Burwell's testimony, the court finds any probative value of the Willis' testimony to be substantially outweighed by the danger of unfair prejudice and confusion. Fed. R. Evid. 403. *See United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) ("Unless the expertise adds something, the expert is at best offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403.")

Accordingly, plaintiff's motion in limine #1 (dkt. #91) and defendants' motion in limine #1 (dkt. #60) will both be GRANTED.

## II. PLAINTIFF'S MOTIONS IN LIMINE

### MIL No. 2: Exclude or limit testimony of defendants' experts Kipp Hartman, Alexander Berkovitz and Christopher Masterson (dkt. #94)

In addition to Robert Willis, defendants disclosed three "non-retained" witnesses associated with the Madison Police Department as experts: Sergeant Kipp Hartman, Sergeant Alexander Berkovitz and Police Officer Christopher Masterson. In their Rule 26(a)(2) disclosures, defendants state that these witnesses may "testify regarding training of Madison police officers on principles of use of force options and decision making and tactical considerations, arresting decisions, conducting investigations, and defendants' actions being consistent with such training in this case." (Dkt. #15.) Plaintiff moves to exclude this testimony on the grounds that it, too, is irrelevant and prejudicial, and it would also be cumulative for all three witnesses to provide the same testimony. In response, defendants argue that "whether [defendants'] use of force was consistent with their training and generally accepted police practice and procedure is relevant to whether it was reasonable or not" under the Fourth Amendment. (Dfts.' Br., dkt. #119, at 1.)

While defendants disclosed Hartman, Berkovitz and Masterson as witnesses under Fed. R. Civ. P. 26(a)(2)(C), meaning they did not have to provide a written report, that rule still requires disclosure of a "summary of the facts and opinions to which the witness is expected to testify." Here, defendants' disclosure provided no such summary of the facts and opinions to which these witnesses will testify, other than stating cryptically that each will testify about police training and whether defendants' actions were consistent with such training. This vague

disclosure provides little insight from which the court can determine whether the proposed testimony would be relevant, useful or unduly prejudicial.

For the same reasons discussed above in the context of Mr. Burwell's and Mr. Willis' opinions, however, the court concludes that Hartman, Berkovitz and Masterson likely could provide no opinions about whether Officers White and Heck acted in accordance with their training and acceptable police practices that would be relevant or useful to the jury in deciding the remaining factual disputes in this case. In contrast, their opinions would very likely be confusing and unduly prejudicial, as they could cause the jury to believe that they ought to substitute their own judgment for these experts' judgments or that the ultimate question is whether defendants complied with MPD policies and training standards, rather than whether defendants acted reasonably under Fourth Amendment standards. Therefore, the court will preclude Hartman, Berkovitz and Masterson from offering opinions about whether Officers Heck and White acted in accordance with training and acceptable police practices, subject to defendants showing before the final pretrial conference that these witnesses have some opinions to offer that would be relevant and not prejudicial.

That being said, Hartman, Berkovitz and Masterson may be able to provide non-opinion, factual testimony regarding training provided to Officers White and Heck that *could* be marginally relevant. Because plaintiff has not identified any persuasive reason for excluding purely factual testimony about police training from these witnesses, the court will not preclude defendants from making a non-cumulative proffer of testimony at the final pretrial conference, and if permitted to testify would at least consider allowing plaintiff's police expert to offer a brief rebuttal opinion. Absent express permission from this court, no such testimony will be allowed from either side at trial.

Finally, plaintiff moved to preclude Berkovitz from offering testimony about the conclusions he made after undertaking an internal investigation of the incident. Defendants concede that such testimony would be improper, so the court will grant that portion of plaintiff's motion as unopposed. Still, the court will not prohibit defendants from offering Berkovitz as an impeachment witness if appropriate.

Accordingly, plaintiff's motion in limine #2 (dkt. #94) is GRANTED IN PART and DENIED IN PART as set forth above.

**MIL No. 3: Omnibus motion (dkt. #95)**

Plaintiff's third motion in limine includes several requests, as set forth below.

**a. Plaintiff moves to prohibit defendants from eliciting evidence of other crimes, wrongs, acts, convictions or police contacts of the plaintiff.**

This motion will be GRANTED as unopposed.

**b. Plaintiff moves to preclude evidence, argument or testimony concerning awards or commendations that defendants have received.**

This motion will be GRANTED as unopposed.

**c. Plaintiff seeks permission to introduce evidence of Officer Heck's and White's prior discipline and complaints for the purpose of establishing that each has a motive to be untruthful about his conduct and in support of punitive damages.**

The particular evidence at issue concerns alleged citizen complaints against Officer White for excessive force, rudeness and harassment, and complaints against Officer Heck for being "smug, rude, looking for a reason to arrest, refus[ing] to allow a citizen to obtain clothing before taking him outside in his underwear and making racial slurs to other officers." (Plt.'s Br., dkt. #136, at 1.) Additionally, plaintiff alleges that Heck was disciplined for making racial comments and placed on a diversion agreement.

As an initial matter, plaintiff's suggestion that Officer Heck's prior discipline for making racial comments should inform the jury's view of his interactions with Rivera and Magada in this case is largely unpersuasive. Nothing about Heck's comments suggest that he held negative opinions about black people generally or biracial or African American women in particular, as the plaintiff apparently wishes to argue. Indeed, two of the comments were not the subject of any discipline because they were deemed to have been made in jest between two officers, one of whom is black.[2] (*See* Dkt. ##41, 42, 43.) Moreover, introducing the specifics of the earlier disciplinary investigation with respect to those comments would be unduly prejudicial under Rule 403.

This leaves the question of the relevance of a single exchange between Heck and another officer for which he *was* disciplined, expressing a view that males who grew up in Africa are more likely to have been raised in a culture dismissive of women's rights.[3] Although the record

---

[2] During a conversation on September 18, 2012, between Officer Heck and Officer Derek Jones, who is black, Jones told Heck that people are sometimes surprised by his age, to which Heck responded, "black don't crack." (Dkt. #41 at 4.) A few minutes later, Heck told Jones that he had stopped a man who performed an illegal u-turn, but only issued him a warning. Jones responded by teasing Heck that he only issued citations to black citizens, to which Heck responded that the man in the car "was black . . . blacker than you." Jones then responded "no he wasn't . . . just like Franklin's mom, right?" Jones was referring to Officer Mike Franklin, who is black, and whose mother is white. (*Id.*) Again, while admonished about such informal exchanges between officers, neither Heck nor Jones were subjected to discipline for these comments.

[3] Officer Heck made this comment at issue in a conversation with Officer Steve Heimsness on September 7, 2012. Several officers, including Heck and Heimsness, had been dispatched to respond to a call for service from a woman at a dance club who reported an unpleasant encounter with a man she had previously dated. (Dkt. #41 at 1-2; dkt. #43 at 3.) After the woman had left, the man and his friends had apparently followed her and a male companion, prompting her to call the police for assistance. After other officers located the man, Heck had the following conversation with Heimsness:

Heck: is he an african guy?
Heimsness: Yes
Heck: that's what the name looked like
Heimsness: so there you go

does not reveal whether Heck had any reason to believe Magada was raised in Africa, if he did, this *might* be a basis for concluding that he at least initially viewed Rivera as a victim. While the court will, therefore, RESERVE on the relevance of Heck's viewpoint, the court can conceive of no circumstance where introduction of the discipline itself would be relevant, nor where that exchange could legitimately be used to suggest bias or racism toward the plaintiff.

This leaves plaintiff's argument as to the admission of evidence of past citizen complaints against the defendants. Under Federal Rule of Evidence 404(b), "evidence of other crimes, wrongs, or acts is inadmissible to show propensity, but may be admissible for other purposes, 'such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity. . . absence of mistake or accident,' or other relevant, nonpropensity purposes." *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 644–45 (7th Cir. 2011) (quoting Fed. R. Evid. 404(b)). Rule 404(b) "allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014). Accordingly, the court "should not just ask whether the proposed other-act evidence is relevant to a non-propensity purpose but how exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." *Id.*

In arguing that such evidence is admissible to show motive or intent, plaintiff relies on *United States v. Brown*, 250 F.3d 580 (7th Cir. 2001), which involved the criminal prosecution

---

Heck: and he's young
Heimsness: sometimes they forget they are not in africa anymore
Heck: i've noticed that on multiple calls
Heimsness: the social mores are not the same
Heck: it's hard moving to an egalitarian society
Heimsness: i know
Heimsness: it was hard for me
Heck: Lol

of two police officers for using excessive force. The court of appeals held that it was proper to admit evidence of a previous incident of force involving one of the officers under Fed. R. Evid. 404(b) because it was relevant to the officer's "intent to punish," as distinct from his propensity to commit the crime charged. *Id.* at 585. As defendants point out, however, intent was an important question in *Brown* because the criminal statute at issue, 18 U.S.C. § 242, includes a specific element of intent, making it a crime to (1) willfully (2) under color of law (3) deprive a person of rights protected by the constitution. *Id.* at 584. Thus, the prosecution was entitled to use the previous incident to prove this element of specific intent. *Id.* at 585. In contrast, under the Fourth Amendment, Officers White's and Heck's intent is largely irrelevant. Instead, claims of excessive force in the case of a "seizure" are analyzed under an "objectively reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Accordingly, the jury must look to whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. *Id.*

Plaintiff also argues that evidence of prior citizen complaints or discipline is relevant to defendants' credibility, because those complaints give them an additional incentive to lie about using force against Rivera. While plaintiff may introduce evidence that Officers White and Heck would be subject to possible discipline if they were found to have engaged in the use of excessive force against Rivera, regardless of whether they had received citizen complaints in the past, plaintiff's suggestion that prior citizen complaints gave defendants an extra incentive to lie is speculative at best. Moreover, any slight probative value of past complaints or disciplinary decisions involving the officers is substantially outweighed by the likelihood of causing mini-trials, undue delay, jury confusion and unfair prejudice to defendants.

Accordingly, plaintiff's motion to introduce such evidence is DENIED except for RESERVING as to the *possible* relevance of Heck's view as to cultural bias in Africa against women.

**d. Plaintiff moves for an order sequestering all witnesses.**

This motion will be GRANTED as unopposed.

**e. Plaintiff requests a hearing outside the presence of the jury to determine the number of crimes for which all potential witnesses have been convicted.**

Defendants do not oppose this motion, but neither side has explained why such a hearing is necessary. If the parties are concerned about the number or admissibility of convictions for any witness, they should confer with each other. If there are disputes that they cannot resolve by a straightforward application of Fed. R. Evid. 404(b) and 609, then the court will address any disputes at the final pretrial conference. Accordingly, plaintiff's request for a hearing regarding the number of convictions for potential witnesses is DENIED without prejudice.

**f. Plaintiff moves for an order prohibiting testimony regarding her alleged placement of software on Vickson Magada's phone to determine if he was having an affair with another woman.**

Plaintiff argues that this evidence is irrelevant because defendants were unaware that she had placed software on Magada's phone at the time of the incident. Defendants oppose the motion on the ground that the evidence has "significant probative value" regarding plaintiff's "demeanor," arguing that it provides an explanation for why she was so upset at Magada on the night of the incident. Defendants further argue that it "corroborate['s] the officers' observations of her." (Dfts.' Br., dkt. #120, at 3.).

Defendants' arguments are unpersuasive. There is no dispute that (a) plaintiff was upset at Magada when she arrived at Sonko's house and (b) she had calmed down by the time

Officer White arrived at plaintiff's apartment. That plaintiff may have had other reasons to be upset at *Magada* unrelated to the events that night has no particular relevance to the claims remaining in this case, particularly since the evidence is that plaintiff only became upset after Officer Heck went upstairs in her apartment. It is undisputed that she was upset about the officers' actions. Thus, the relevant dispute to be decided by the jury concerns what happened between plaintiff and Officers White and Heck, not whether plaintiff suspected Magada was having an affair or was otherwise upset with him. Accordingly, plaintiff's motion to preclude this evidence will be GRANTED.

**MIL No. 4: Preclude improper testimony by defense witnesses (dkt. #96)**

Finally, plaintiff moves for an order limiting or excluding "improper testimony by defenses witnesses, including defendants' expert, Robert C. Willis." Plaintiff's motion makes little sense, as the only concern raised is that Willis has offered inappropriate testimony in previous cases in which he acted as an expert, and even as to Willis, plaintiff submitted no evidence that Willis intends to offer similar "inappropriate" testimony in this case. In any event, because the court is excluding Willis' testimony for other reasons, this motion will be DENIED AS MOOT, except to note that the court will enforce the Federal Rules of Evidence as to both sides' witnesses at trial.

**II. DEFENDANTS' MOTIONS *IN LIMINE***

**MIL No. 2: Preclude experts and other witnesses from expressing legal conclusions or other opinions on ultimate verdict questions (dkt. #61)**

Defendants request an order precluding all witnesses from expressing legal conclusions or "ultimate fact opinions" regarding defendant officers' actions. (Dfts.' Br., dkt. #61, at 3.)

Besides the expert opinion of Ernest Burwell, which has already been excluded, defendants do not provide any specific example of testimony that they believe should be precluded. Without knowing what testimony in particular defendants believe would constitute an improper legal conclusion, the court cannot determine whether the testimony should be excluded. Of course, counsel for both sides can object to specific testimony if they believe it is improper. Accordingly, this motion will be DENIED as unnecessary.

## MIL No. 3: Preclude plaintiff's expert and other witnesses from testifying that another witness is or is not credible or telling the truth (dkt. # 62)

Defendants request an order precluding all witnesses from testifying regarding the credibility or truthfulness of another witness. Like the previous motion, all of defendants' arguments concern testimony of Ernest Burwell, who has been excluded. Accordingly, this motion will be DENIED AS MOOT.

## MIL No. 4: Preclude argument, testimony or other evidence regarding information not known by the officers at the time of plaintiff's arrest (dkt. #63)

Defendants move to preclude any argument, testimony or other evidence regarding three topics: (1) what actually happened at Mr. Sonko's apartment; (2) the actual physical condition of Rivera's daughter; and (3) whether or not Rivera or Magada were armed. Defendants argue that because the Fourth Amendment is an objective standard, only the information known and available to Officers White and Heck is relevant to whether they used excessive force or conducted a lawful arrest. Defendants argue that it would be confusing and prejudicial to permit Rivera to talk about what actually happened, as opposed to what Officers

White and Heck knew based on their own observations and conversations with Mr. Sonko and Ms. Tate.

Defendants' arguments are largely unpersuasive. Within reason, what happened at Mr. Sonko's apartment is relevant, albeit background information, which provides context for the subsequent events at Rivera's apartment. Further, it would be unfair to Rivera if Sonko's version of events (or even more unfair, defendants' version of what Sonko reported) were the only version presented to the jury, as Rivera disputes that she behaved as violently as Sonko apparently reported. Thus, the court will permit Rivera to introduce limited testimony regarding the events at Sonko's apartment and whether her daughter was injured, if she chooses to do so. Defendants' concerns about the jury using this evidence when evaluating the Fourth Amendment questions can be addressed through jury instructions and, of course, argument of counsel. Specifically, the court will instruct the jury that what happened at Sonko's apartment is relevant only for background and that the relevant consideration for purposes of Rivera's Fourth Amendment claim is what was known to Officers White and Heck, respectively, when deciding to restrain Rivera, as well as the manner for doing so.

Finally, with respect to whether Rivera or Magada were armed, while the court is unaware of anything in the record suggesting that the officers were concerned that either were armed, whether an individual is armed is obviously relevant to whether the force used is reasonable and necessary under the Fourth Amendment. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) ("threat reasonably perceived by the officer" is a factor to consider in excessive force analysis). Thus, counsel can ask Officers White and Heck whether they saw any weapons on Rivera or Magada, or whether they had reason to believe they were armed. Moreover, Rivera and Magada are free to testify whether they were armed, what they were

wearing, and whether they took any actions that would have indicated to Officers White and Heck that they were (or were not) armed. Again, the jury instructions will make clear that the jury should only consider the information defendants possessed in applying the objective Fourth Amendment analysis. With these caveats, therefore, the motion will be also DENIED.

**MIL No. 5: Preclude evidence or argument criticizing the conduct of defendants prior to plaintiff being arrested (dkt. #64)**

Defendants seek an order precluding plaintiff from introducing evidence or argument criticizing any actions they took before arresting Rivera including, in particular, whether: (1) Officer White should have interviewed others before heading to Rivera's apartment; (2) Officer White should have called Rivera's apartment before travelling there; (3) Officer White should have stated the purpose of his investigation, including potential child abuse, immediately upon arrival; and (4) Officer White should have attempted to ascertain the condition of Rivera's daughter immediately when he arrived at Rivera's apartment. Curiously, defendants acknowledge in their motion that this information is relevant background information and may even be relevant to the "totality of the circumstances" existing at the time of plaintiff's arrest. Nevertheless, defendants argue that because "pre-seizure" conduct cannot be the basis for Fourth Amendment liability, plaintiff should not be permitted to make arguments critical of Officer White's pre-seizure decisions.

As a general proposition, defendants are correct that pre-seizure conduct cannot itself violate the Fourth Amendment. *See Marion v. City of Corydon*, 559 F.3d 700, 705 (7th Cir. 2009) ("Pre-seizure police conduct cannot serve as a basis for liability under the Fourth Amendment; we limit our analysis to force used when a seizure occurs."). Defendants acknowledge, however, their conduct leading up to the use of force on Rivera is properly

considered as part of the totality of the circumstances: "[t]he sequence of events leading up to the seizure is relevant because the reasonableness of the seizure is evaluated in light of the totality of the circumstances." *Williams v. Ind. State Police Dep't*, 797 F.3d 468, 483 (7th Cir. 2015), cert. denied, 136 S. Ct. 1712 (2016)). Thus, plaintiff may introduce evidence or testimony relating to defendants' pre-seizure decisions.

With respect to whether plaintiff may express "criticism" of pre-seizure decisions, defendants' concerns largely relate to opinions that would have been offered by plaintiff's expert, Ernest Burwell, but which have been stricken. Because it is not clear what type of "critical" testimony or argument that other witnesses or counsel may make, the court will not enter an order excluding such testimony or argument categorically. That being said, plaintiff may not argue for a *liability* finding based on any of defendants' "pre-seizure" decisions, even if arguably miscalculations or missteps, occurring earlier in the night. *Estate of Heenan ex rel. Heenan v. City of Madison*, 111 F. Supp. 3d 929, 945 (W.D. Wis. 2015).

Accordingly, the court will GRANT IN PART and DENY IN PART the motion as set forth above.

**MIL No. 6: Preclude questioning by counsel or testimony regarding the officers' subjective motivations, beliefs or states of mind (dkt. #65)**

Defendants also move to preclude any questioning by counsel or testimony regarding Officers White's and Heck's "subjective motivations, beliefs or states of mind," arguing that such evidence is irrelevant under the objective Fourth Amendment standard. Many of defendants' arguments concern opinions offered by plaintiff's police practices expert Ernest Burwell, which have already been excluded. Defendants also point to statements they made during depositions about whether they had probable cause to arrest Rivera or exigent

circumstances to enter her home. The court agrees with defendants that counsel may not elicit defendants' opinions about whether they had probable cause or exigent circumstances, as such opinions are irrelevant after the court's summary judgment decision.

However, the court will not prohibit all questioning about the officers' "subjective motivations, beliefs or states of mind," as such evidence may be relevant to the totality of the circumstances and the reasonableness of the officers' actions in this case. "[O]bjective reasonableness turns on the facts and circumstances of each particular case," including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 135 S. Ct. at 2473. Here, the officers have suggested that Rivera was out of control, ignored orders, actively resisted after being handcuffed and presented a risk of harm to the officers. These perceptions by the officers are relevant to the excessive force analysis. At trial, both sides can question Officers White and Heck about their perceptions, which will necessarily involve questions about the officers' subjective beliefs. Of course, the jury will also be instructed that the ultimate standard is one of objective reasonableness, not whether the officers' individual perceptions, beliefs or motivations were reasonable.

Accordingly, the court will GRANT IN PART and DENY IN PART defendants' motion in limine #6 (dkt. #65) as set forth above.

**MIL No. 7: Preclude evidence or argument that defendants' conduct was inconsistent with departmental policies or procedures, state law enforcement standards or any other proscriptive guidelines (dkt. #66)**

Defendants move to preclude any evidence or argument regarding whether their conduct was or was not consistent with departmental policies or procedures, state law enforcement standards or any other proscriptive guidelines, arguing that such evidence is irrelevant to whether their conduct in arresting Rivera and using force was objectively reasonable under the totality of the circumstances. The court finds this motion somewhat confusing, as defendants themselves argue in other motions for the admission of such evidence through their outside police practices expert and non-retained experts associated with the Madison Police Department.

For the reasons already discussed above, the court has already ruled that any expert opinion testimony about whether Officers White and Heck complied with departmental policies, state standards or other guidelines is likely to be irrelevant, confusing or unduly prejudicial on the specific facts here. At its core, Rivera's remaining claims turn on the credibility of the individual parties' accounts of events, not whether the officers followed specific standards. However, the court will not preclude the parties from introducing factual evidence about training or policies that may be relevant as background to explain the officers' actions. For example, the officers may discuss their training in responding to and investigating domestic dispute incidents and how their training informed their actions at Rivera and Magada's apartment. Indeed, the court has not precluded either side from making a proffer of expert testimony on these narrowed topics. To the extent the parties need further clarification in this regard, they may make a proffer and seek clarification at the final pretrial conference.

Accordingly, this motion is GRANTED IN PART and DENIED IN PART as set forth above.

**MIL No. 8: Preclude argument, testimony or other evidence regarding what experts or others would or would not have done if confronted with the same facts as defendants (dkt. #67)**

Defendants move to preclude argument, testimony or other evidence regarding how experts or other witnesses would have behaved under the circumstances facing Officers White and Heck, arguing that such evidence is irrelevant to the Fourth Amendment objective reasonableness standard. Again, defendants appear to be concerned primarily with opinions that plaintiff's police practices expert, Ernest Burwell, intended to offer, which have been stricken. To the extent defendants seek a ruling prohibiting counsel from asking any hypothetical questions to the remaining witnesses, defendants' request is too broad and unsupported by any relevant legal authority. Further, defendants have not shown that such a ruling is appropriate or necessary. Accordingly, the motion will be DENIED.

**MIL No. 9: Preclude questions, testimony or other evidence that plaintiff was acquitted in subsequent criminal proceedings (dkt. #68)**

Although plaintiff was arrested for resisting/obstructing an officer, she was not prosecuted for that offense. Instead, she was prosecuted and later acquitted for disorderly conduct. Defendants seek to preclude plaintiff from presenting any evidence, testimony or argument regarding her prosecution and acquittal on the ground that these subsequent events are irrelevant and prejudicial. For her part, plaintiff argues that the fact she was not prosecuted for the conduct for which she was arrested by defendants is relevant to defendants' credibility, motivation and intent.

The court agrees with defendants that evidence relating to plaintiff's subsequent criminal proceedings should be excluded entirely. The court has already determined that defendants had "arguable probable cause" to arrest plaintiff, so the parties will not be permitted

to argue whether probable cause to arrest was present. Moreover, whether the prosecutor decided to pursue a particular charge, or whether plaintiff was acquitted of a charge, is not determinative of whether the officers used excessive force against plaintiff. *See Ochana v. Flores*, 347 F.3d 266, 272 (7th Cir. 2003) ("It was not an abuse of discretion for the court to grant the officers' motion in limine to bar . . . the disposition of the underlying criminal charges, because these were not facts within the officers' knowledge at the time of the arrest. . . ."); *Currier v. Baldridge*, 914 F.2d 993, 996 (7th Cir. 1990) ("[T]he mere fact that [plaintiff] was acquitted of the crime for which he was initially arrested does not lead to section 1983 liability for the arresting officer.").

Further, significant prejudice or confusion could arise if the jury seeks to retroactively gauge the reasonableness of defendants' use of force against the knowledge that plaintiff was not prosecuted for resisting/obstructing an officer and was later acquitted of disorderly conduct. Accordingly, this motion will be GRANTED.

**MIL No. 10: Preclude evidence or argument regarding other use of force incidents (dkt. #69)**

Defendants move to preclude plaintiff introducing evidence, argument or testimony regarding other use of force incidents not involving defendants, such as incidents involving other officers with the Madison Police Department or elsewhere. This motion will be GRANTED as unopposed.

**MIL No. 11: Preclude evidence or argument suggesting that Officer Heck's conduct is to be evaluated based solely on the information available to him, as opposed to information that was also available to Officer White (dkt. #70)**

Defendants move to exclude evidence or argument that Officer Heck's action should be evaluated based solely upon the information available to him, as opposed to the information that was available to Officer White. Specifically, defendants argue that under the "collective knowledge doctrine," Officer Heck's actions should be evaluated based on the knowledge of both officers as to the facts and circumstances.

The court will deny defendants' motion. "The collective knowledge doctrine permits an officer to stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts . . . necessary . . . to permit the given action." *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010). Defendants do not explain how this doctrine would apply in this case. For example, defendants do not suggest that Officer White directed Officer Heck to stop Rivera, use any specific technique in doing so, search her or arrest her. Defendants also do not suggest that Officer Heck's use of force could be based on some independent knowledge of Officer White about the events at Mr. Sonko's apartment, nor can the court conceive why this would be so. Instead, defendants cite only to a case involving a probable cause determination, *United States v. Parra*, 402 F.3d 752 (7th Cir. 2005), which is no longer at issue in this case. Because defendants' argument is undeveloped and vague, therefore, the motion will be DENIED without prejudice to defendants attempting to elaborate at the final pretrial conference.


## MIL No. 12: Preclude argument, testimony or other evidence regarding defendants' employment or disciplinary records (dkt. #71)

Defendants' motion to preclude argument, testimony or other evidence regarding their employment or disciplinary records will be GRANTED for reasons discussed above in the context of plaintiff's mirror-image motion.

**MIL No. 13: Preclude questioning by counsel, testimony or other evidence criticizing the extent to which plaintiff remained in handcuffs subsequent to her arrest (dkt. #72)**

Defendants move to preclude argument, testimony or other evidence critical of the extent to which Rivera remained in handcuffs subsequent to arrest, as such evidence is irrelevant to any issues remaining in the case. Rivera's putative expert, Ernest Burwell, stated in his report that Officers White and Heck left Rivera in handcuffs for too long and that they should have been removed sooner under MPD policies and national standards. (Burwell Rep., dkt. #14, at 18-19.) While Rivera concedes that she is not bringing a Fourth Amendment claim based on the length of time in which she remained in handcuffs, she does argue that defendants' decision to leave her in handcuffs for more time than consistent with MPD policies and national standards is relevant to "the totality of the circumstances of defendants' other conduct." (Plt.'s Br., dkt. #148, at 1-2.) She also states that she believes defendants will attempt to argue that plaintiff was kept in handcuffs because she was "unruly," and that at minimum she should be able to rebut this argument.

The court concludes that any evidence, testimony or argument regarding the length of time for which Rivera remained in handcuffs after she was arrested, as well as her behavior after she was arrested, should be excluded as irrelevant and unduly prejudicial. Defendants' use of force must be evaluated based on the circumstances that existed and of which defendants were aware at the time of the force incident. At the time of the force incident, defendants had no way of knowing how Rivera would behave once arrested. Moreover, evidence regarding Rivera's behavior after she was arrested and the length of time she remained in handcuffs would be likely to cause jury confusion, as the jury might well be tempted to give undue consideration to those events. This is particularly true here, where there is a dispute between the parties

regarding Rivera's behavior after she was arrested, and whether defendants were responsible for failing to remove Rivera's handcuffs in a timely manner. Indeed, permitting either side to introduce evidence regarding post-arrest events would likely lead to a mini-trial over matters having little, if any, relevance to the actual claims remaining in the case. Accordingly, this motion will be GRANTED, as well as precluding defendants' counsel from eliciting testimony or other evidence regarding plaintiff's conduct after her arrest.

**MIL No. 14: Preclude questioning by counsel, testimony or other evidence that there was an unidentified third officer (dkt. #73)**

During the deposition of plaintiff's expert, Ernest Burwell, Burwell stated that he believed a third officer may have responded to the call regarding the incident at plaintiff's apartment. (Burwell Dep., dkt. #58, at 163-64.) Burwell acknowledged that there was no evidence that a third officer was actually present in plaintiff's apartment. (*Id.*) Defendants move to preclude any argument, testimony or other evidence that there was a "third officer" involved with the incident in the case, arguing that there is no evidence that a third officer was present.

Since Burwell is unlikely to be permitted to testify at all, his speculation about a third officer will not be admitted. However, if another witness has actual knowledge or other evidence that a third officer was involved, a party can certainly present such evidence unless it violates a Rule 26 disclosure obligation. If no such evidence exists, as defendants assert, then no such evidence will be introduced. Indeed, the court will not permit speculation about the incident, including who *may* have been present, but defendants have not made any legitimate argument to preclude admissible evidence about a third officer. Accordingly, this motion will be DENIED.

**MIL No. 15: Preclude argument, testimony or other evidence regarding the existence or absence of post-incident squad car video, as well as any related department policies regarding the same (dkt. #74)**

Defendants seek to preclude plaintiff from presenting argument, testimony or other evidence regarding the existence or absence of video from Officer White's squad car during the time in which he transported Rivera to the jail after she was arrested. Defendants initially represent that Officer White has no recollection if any such video ever existed and, in any event, that the City has never located such a video. In response, Rivera argues that she should be permitted to present evidence that MPD policy required Officer White to record his transport of Rivera to the jail and that the lack of video footage suggests that White either intentionally failed to turn on the video or chose to transport Rivera knowing that his video recorder was broken. Rivera further argues that this evidence is relevant because it undermines the credibility of Officer White and his description of Rivera as unruly and uncooperative during her transport.

As discussed above in the context of defendants' motion to exclude evidence regarding the length of time Rivera was held in handcuffs, the court concludes that all testimony, evidence and argument regarding what occurred after Rivera was arrested should be excluded as irrelevant, confusing and prejudicial. At least in the liability phase of trial, these post-arrest events raise too many disputed issues that would distract the jurors from their task of evaluating the facts and circumstances known to Officers White and Heck at the time of the force incident. Thus, Rivera will be precluded from making arguments or presenting evidence about whether there was a video recording of the transport. Likewise, defendants will be precluded from presenting testimony or argument about Rivera's behavior in the squad care or during

booking. As to the damages phase of trial, the court will at least allow plaintiff to make a proffer as to the policy and opportunity for an officer to take such video and the department to preserve it, although there would appear insufficient basis to allow plaintiff to argue that the video's absence be construed against the defendants even as to damages. Accordingly, this motion will be GRANTED IN PART AND RESERVED IN PART.

**MIL No. 16: Prohibiting testimony or argument that plaintiff was the "victim" of the incident or of any other incident on that night (dkt. #76)**

Defendants argue that it would be unduly prejudicial for Rivera's counsel to refer to Rivera as a "victim" during the course of trial. Rivera argues that she should be permitted to refer to herself as a victim because she *was* a victim of both domestic abuse and police excessive force.

The court agrees with defendants that referring to Rivera as the "victim" poses a risk of unfair prejudice, at least until closing argument. In particular, the parties will not be permitted to create a mini-trial over whether Rivera was actually a victim or aggressor during the domestic dispute earlier on the night in question, since neither defendant was present to see that dispute. As for whether Rivera was a "victim" of police excessive force, that is a question for the jury that has not yet been resolved. That being said, it would be similarly prejudicial for defendants or counsel to refer to Rivera as "the suspect," "the criminal" or the like. Accordingly, the motion is GRANTED. Rivera should be referred to at trial as "plaintiff," "Ms. Rivera" or "Rivera."

**MIL No. 17: Prohibiting testimony or argument regarding race or racial motivation (dkt. #77)**

Defendants move to preclude Rivera from arguing that their actions against her were racially motivated, on the ground that there is no evidence that their conduct was in any way motivated by race. Additionally, they remind the court that because the Fourth Amendment is an objective standard, their motivations are irrelevant in any event. In response, Rivera argues that she should at least be permitted to present her theory that defendants' perceptions of the alleged threat she posed were unreasonable and influenced by her race and gender.

Although defendants are correct that their subjective intent is irrelevant to whether a Fourth Amendment violation occurred, their subjective perceptions are relevant in evaluating their description of the incident. Thus, plaintiff's counsel is free to question Officers White or Heck about explicit or implicit gender or racial bias that might have clouded their view or description of Rivera, including that she was "out of control" and "screaming at the top of her lungs," as well as argue the same in an effort to undermine defendants' credibility. On the other hand, as already ruled, plaintiff may *not* suggest that Officer Heck is a racist based on extraneous evidence, including statements he may have made that were investigated by the MPD. Of course, defendants can also explore and argue whether the plaintiff's perceptions may have been clouded based on her own explicit or implicit bias. (*See* discussion *infra*.)

Accordingly, defendants' motion is GRANTED IN PART and DENIED IN PART.

**MIL No. 18: Preclude argument, testimony or other evidence that plaintiff's job prospects were impacted by the subsequent criminal proceedings against her (dkt. #78)**

Defendants seek to preclude plaintiff from introducing evidence during the damages phase of trial that her employment prospects were dimmed by her arrest and subsequent criminal proceedings. Plaintiff seeks to offer evidence that: (1) those with criminal histories have more difficulty obtaining employment generally; and (2) she was rejected by numerous

potential employers specifically during and after the time criminal charges were pending against her.

Given this court's holding on summary judgment that Officers White and Heck had arguable probable cause to arrest Rivera for disorderly conduct, plaintiff's evidence and argument will be excluded. Rivera has cited no legal authority to support her claim that she could recover damages stemming from an arrest supported by probable cause. Moreover, the officers did not make the decision to charge and prosecute Rivera formally for disorderly conduct. Indeed, the officers did not even arrest Rivera for disorderly conduct. Instead, the decision to pursue a disorderly conduct charge was made by the Dane County District Attorney's office. For all these reasons, Rivera has failed to show a causal link between the alleged damages to her employment prospects and the alleged unlawful conduct by defendants that is at issue in this case. Accordingly, this motion will be GRANTED.

**MIL No. 19: Preclude evidence regarding indemnification (dkt. #79)**

Defendants move to preclude plaintiff from presenting any evidence to the jury that the City of Madison has a statutory obligation to indemnify defendants. The court agrees this evidence is irrelevant. Neither side should make any reference to defendants' ability to pay damages or to what entity will ultimately pay damages. Accordingly, this motion will be GRANTED.

**MIL No. 20: Preclude "golden rule" testimony and arguments (dkt. #80)**

Defendants moves to preclude any "golden rule" arguments, in which the jury is asked to put itself in "some other person's shoes in evaluating the evidence." Plaintiff opposes the motion on the ground that she is not sure what a "golden rule" argument is. As the Seventh

Circuit has explained, a "'Golden Rule' appeal [is one] in which the jury is asked to put itself in [someone else's] position," and "'is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007) (affirming district court's ruling barring "Golden Rule" arguments) (quoting *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989)). Because the Seventh Circuit has repeatedly stated that such arguments are improper, defendants' motion will be GRANTED. At the final pretrial conference, plaintiff may seek further clarification from the court about what type of argument is prohibited, if necessary, although the above-quoted language appears straightforward.

### MIL No. 21: Permit instruction that the officers' presence on plaintiff's stairwell was justified by a lawful *Terry* stop, independent of consent or exigent circumstances (dkt. #81)

The court concluded at summary judgment that Rivera had given Officer White consent to be present just inside the front door of her apartment, but there was a genuine factual dispute about whether Rivera or Magada had given Officer White consent to go beyond the small entryway. (Dkt. #57 at 21-22). Additionally, the court held that defendants had failed to show any exigent circumstances that justified their entry into the apartment. (*Id.* at 23.) This latter ruling may be material at trial because defendants effected a warrantless arrest of Rivera on the adjacent stairway of her apartment, which is arguably beyond the spatial scope of the consent she claims to have given. (*Id.* at 22.) At trial, defendants seek to present an alternate theory: that their presence on the stairway was justified under *Terry v. Ohio*, 392 U.S. 1, 21 (1968), because they had probable cause to arrest Rivera.

Defendants' argument is completely undeveloped and, in any event, based on a faulty premise. "[P]olice officers may not constitutionally enter a home without a warrant to effectuate an arrest, absent consent or exigent circumstances, even if they have *probable cause*." *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001) (emphasis added). In contrast, *Terry* addressed a stop under the lower standard of "reasonable suspicion," and defendants cite no legal authority for the proposition that a police officer can enter a home, *or* another area of a home for which consent to enter has been expressly withheld (at least according to plaintiff), based on that lower standard. Nor do defendants cite any authority suggesting that *Terry*-stops can be made in a private residence at all. Absent such authority, or at least a more developed and persuasive argument, the court is disinclined to apply the holding of *Terry* under the circumstances of this case. Accordingly, this motion will be DENIED.

That being said, defendants' motion raises a different legal question as to whether defendants should be granted qualified immunity with respect to Rivera's unlawful arrest claim. To the extent the court understands it, plaintiff's claim is based on the theory that her arrest was unlawful because she was arrested on an immediately adjacent stairway leading to the remainder of her apartment, once Officer White attempted to ascent those stairs contrary to her consent. At summary judgment, defendants argued that this arrest was lawful because Rivera had consented for the officers to be on the stairs, or in the alternative, exigent circumstances permitted them to be on the stairs. Both arguments involved disputed issues of material facts requiring a trial. Even assuming a lack of consent to Officers White and Heck being on the stairway, and an absence of exigent circumstances, the question remains whether clearly established law prohibited those officers from making an arrest on these adjacent stairs,

just as they could seize evidence in plain view although outside the area in which they were allowed to stand.

This question was not developed at summary judgment. Defendants referred the court to the so-called "other-lawful-basis exception," discussed in Wayne R. LaFave, 3 <u>Search and Seizure: A Treatise on the Fourth Amendment</u> (5th Ed.), § 6.1(c), which Professor LaFave states permits police to make an arrest once they lawfully enter a home. However, defendants failed to discuss Professor LaFave's further statements that: (1) "police once inside should be allowed . . . to make an unannounced arrest" so long as "they do not exceed the spatial boundaries of the consent given"; and (2) "it is essential that the presence of the police at the very time and place of arrest be consistent with the entry authority relied upon." *Id*. For her part, Rivera relied primarily on case law relating to searches of a car or home, rather than arrests within a home. Finally, *neither* side adequately addressed whether clearly established law prohibited Officers White and Heck from making an arrest under the circumstances similar to those here.

Because defendants do assert a qualified immunity defense, Rivera has the burden of showing that defendants are not immune. As applicable here, Rivera must show that she had a clearly established right not to be arrested within her home where: (1) officers had arguable probable cause to arrest her (based on the original altercation rather than her conduct in her own home); (2) she had consented for officers to be in the entryway of her home; and (3) she took several steps outside the entryway of her home, but always remained within the direct view of, and only a few feet from, the officers. Because this issue was not squarely addressed at summary judgment, and should be resolved before trial, the court will give the parties an opportunity to file legal briefs on this narrow question. Plaintiff may have until September 26,

2018, to file a brief explaining why Officers White's and Heck's otherwise lawful arrest on stairs directly adjacent to an area in which she consented to their presence violated a clearly established right. Defendants may have until October 5, 2018 to file a response. Unless the court deems it necessary, there will be no reply briefs, and both sides should focus their submissions on the most closely analogous case law, both factually and legally.

## MIL No. 22: Regarding jury instruction for common law tort (dkt. #105)

Defendants further argues that if the court gives a separate jury instruction for plaintiff's state law battery claim, then an instruction regarding the applicable "middle burden of proof" should also be given. Although jury instructions have not yet been circulated, the court agrees generally with defendants. Under Wisconsin law, civil tort actions for battery by the police require proof by "clear and convincing evidence," as opposed to the lower burden of "preponderance of the evidence" that applies to claims under 42 U.S.C. § 1983. *See Shaw v. Leatherberry*, 2005 WI 163, ¶ 21, 286 Wis. 2d 380, 391, 706 N.W.2d 299, 305; Wis. JI-Civil 205. Therefore, the motion will be GRANTED.

## MIL No. 23: Allow argument that consent given to either Officer White or Officer Heck by plaintiff or Magada to be in their home extended to all other law enforcement officers, regardless whether those other law enforcement officers were directly given express or implied consent (dkt. #106)

As the court recognized at summary judgment, there is a genuine factual dispute about whether Rivera or Magada consented to Officer White entering their apartment beyond the small entryway at the bottom of the stairs. (Dkt. #57 at 20-22.) Rivera also avers that she specifically told Officers White and Heck that they could *not* go upstairs. In contrast, the officers aver that Rivera told them they could go upstairs so long as they removed their shoes.

Defendants now request permission to argue that if the jury finds that Rivera or Magada consented to Officer White going upstairs, that consent extends to Officer Heck, regardless whether Heck received consent directly. Plaintiff makes several arguments in opposition to the motion, although most are not directly responsive. Specifically, she argues that: (1) there is a dispute about the scope of consent; (2) Rivera's objections to the officers' entry negated any consent given by Magada; and (3) any consent given was later revoked. These arguments highlight the factual disputes regarding consent, but do not address defendants' legal argument regarding whether consent to Officer White's going upstairs extends to Officer Heck, unless expressly withdrawn.

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness---what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Under this standard, defendants may argue that a reasonable person would have understood the consent provided to White extended to Heck.

To the extent defendants are arguing that consent provided to Officer White extended to Officer Heck *as a matter of law* under the "consent once removed" doctrine, *United States v. Diaz*, 814 F.2d 454, 459 (7th Cir. 1987), however, the court will reserve a decision on this issue. The "consent once removed" doctrine applies where an agent or informant "entered at the express invitation of someone with authority to consent, at that point established the existence of probable cause to effectuate an arrest or search, and immediately summoned help from other officers." *Id.* Under those circumstances, the consent given to the informant extends to the assistant officers. *Id.* Although defendants make a persuasive argument that the "consent once removed" doctrine should apply in this case, the Seventh Circuit recently

abrogated the doctrine itself in substantial part.  *See United States v. Rivera*, 817 F.3d 339, 343

(7th Cir. 2016) (holding that "consent once removed" doctrine should be abandoned because

it is based on the false premise that consent to an informant ever extended to law enforcement

officers, but noting that such entries or searches by law enforcement can nearly always be

supported by another permissible ground).  As defendants argue, however, the doctrine would

still be relevant to the question of qualified immunity in light of the case law at the time of the

underlying incident, but qualified immunity is an issue to be resolved by the court, not the

jury.  Because there remain disputed issues regarding the existence and scope of consent given

Officer White, and whether it was effectively withdrawn, the court will RESERVE any decision

regarding whether that consent should extend to Officer Heck proceeding upstairs as a matter

of law.


ORDER

IT IS ORDERED that:

1.  Plaintiff's motion in limine #1 to preclude defendants' expert Robert C. Willis from testifying (dkt. #91), is GRANTED.

2.  Plaintiff's motion in limine #2 to exclude or limit testimony of defendants' experts Kip Hartman, Alexander Berkovitz and Christopher Masterson (dkt. #94), is GRANTED IN PART AND DENIED IN PART, as set forth above.

3.  Plaintiff's omnibus motion in limine #3 (dkt. #95), is GRANTED IN PART AND DENIED IN PART, as set forth above.

4.  Plaintiff's motion in limine #4 to preclude improper testimony by defense witnesses (dkt. #96), is DENIED AS MOOT.

5.  Defendants' motion in limine #1 to preclude plaintiff's expert Ernest Burwell from testifying (dkt. #60), is GRANTED.

6.  Defendants' motion in limine #2 to preclude experts and other witnesses from expressing legal conclusions or other opinions on ultimate verdict questions (dkt. #61), is DENIED.

7. Defendants' motion in limine #3 to preclude plaintiff's expert and other witnesses from testifying that another witness is or is not credible or is not telling the truth (dkt. #62), is DENIED AS MOOT.

8. Defendants' motion in limine #4 to preclude argument, testimony or other evidence regarding information not known by the officers at the time of plaintiff's arrest (dkt. #63), is DENIED as set forth above.

9.  Defendants' motion in limine #5 to preclude evidence or argument criticizing the conduct of defendants prior to plaintiff being arrested (dkt. #64), is GRANTED IN PART AND DENIED IN PART, as set forth above.

10.  Defendants' motion in limine #6 to preclude questioning by counsel or testimony regarding the officers' subjective motivations, beliefs or states of mind (dkt. #65), is GRANTED IN PART AND DENIED IN PART, as set forth above.

11.  Defendants' motion in limine #7 to preclude evidence or argument that defendants' conduct was inconsistent with departmental policies or procedures, state law enforcement standards or any other proscriptive guidelines (dkt. #66), is GRANTED IN PART AND DENIED IN PART, as set forth above.

12.  Defendants' motion in limine #8 to preclude argument, testimony or other evidence regarding what experts or others would or would not have done if confronted with the same facts as defendants (dkt. #67), is DENIED.

13.  Defendants' motion in limine #9 to preclude questions, testimony or other evidence that plaintiff was acquitted in subsequent criminal proceedings (dkt. #68), is GRANTED.

14. Defendants' motion in limine #10 to preclude evidence or argument regarding other use of force incidents (dkt. #69), is GRANTED.

15.  Defendants' motion in limine #11 to preclude evidence or argument suggesting that Officer Heck's conduct is to be evaluated based solely on the information available to him, as opposed to information that was also available to Officer White (dkt. #70), is DENIED without prejudice.

16.  Defendants' motion in limine #12 to preclude argument, testimony or other evidence regarding defendants' employment or disciplinary records (dkt. #71), is GRANTED.

17.  Defendants' motion in limine #13 to preclude questioning by counsel, testimony or other evidence criticizing the extent to which plaintiff remained in handcuffs subsequent to her arrest (dkt. #72), is GRANTED.

18.  Defendants' motion in limine #14 to preclude questioning by counsel, testimony or other evidence that there was an unidentified third officer (dkt. #73), is DENIED.

19.  Defendants' motion in limine #15 to preclude argument, testimony or other evidence regarding the existence or absence of post-incident squad car video as well as any related department policies regarding the same (dkt. #74), is GRANTED IN PART AND RESERVED in part, as set forth above.

20.  Defendants' motion in limine #16 to prohibiting testimony or argument that plaintiff was the "victim" of the incident or of any other incident on that night (dkt. #76), is GRANTED.

21.  Defendants' motion in limine #17 to prohibit testimony or argument regarding race or racial motivation (dkt. #77), is GRANTED IN PART AND DENIED IN PART, as set forth above.

22.  Defendants' motion in limine #18 to preclude argument, testimony or other evidence that plaintiff's job prospects were impacted by the subsequent criminal proceedings against her (dkt. #78), is GRANTED.

23.  Defendants' motion in limine #19 to preclude evidence regarding indemnification (dkt. #79), is GRANTED.

24.  Defendants' motion in limine #20 to preclude "golden rule" testimony and arguments (dkt. #80), is GRANTED.

25.  Defendants' motion in limine #21 to permit instruction that the officers' presence on plaintiff's stairwell was justified by a lawful *Terry* stop, independent of consent or exigent circumstances (dkt. #81), is DENIED.

26.  Defendants' motion in limine #22 regarding jury instruction for common law tort (dkt. #105), is GRANTED.

27.  The court RESERVES decision on defendants' motion in limine #23 to allow argument that consent given to either Officer White or Officer Heck by plaintiff or Magada to be in their home extended to all other law enforcement officers, regardless whether those other law enforcement officers were directly given express or implied consent (dkt. #106).

28.  Plaintiff may have until September 26, 2018 to file a brief explaining why Officers White and Heck are not entitled to qualified immunity on her unlawful arrest claim. Defendants may have until October 5, 2018 to file a response.

Entered this 12th day of September, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge